## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**DANIEL LEE KEETEN,**

**Plaintiff,**

**v.**                                        **Civil Action No. 2:15-cv-13616**

**NANCY A. BERRYHILL,**

**Acting Commissioner of Social Security,**

**Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f, based on disability as a child. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before this Court are Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 10), and Defendant's Brief in Support of Defendant's Decision (ECF No. 11).

Daniel Lee Keeten (hereinafter referred to as Claimant), received SSI[1] as a child after meeting listings for mild mental retardation (intellectual disability) and a phonological disorder. Claimant was born on February 15, 1994 (Tr. at 29). Upon reaching the age of 18, on February 15, 2012, his eligibility for SSI was re-determined. On May 21, 2012, the Commissioner of Social Security (hereinafter referred to as Defendant) determined that Claimant is no longer disabled (Tr.

---

[1] A decision dated August 4, 2005, awarded claimant benefits.

at 63-65).  This determination was upheld upon reconsideration after a case review on November 2, 2012.  On December 11, 2012, Claimant filed a request for hearing (Tr. at 92).  A hearing was held on January 8, 2014, in Charleston, West Virginia before an Administrative Law Judge (ALJ).  On March 24, 2014, the ALJ denied claimant's application for disability (Tr. at 7).  On May 20, 2014, Claimant sought review of the ALJ's decision by the Appeals Council (*See* Tr. at 6, 407-409).  In a Notice dated August 3, 2015, the Appeals Council (AC) denied Claimant's request for review (Tr. at 1-5).  Claimant[2] filed the instant complaint with the District Court on October 1, 2015, seeking remand and reversal of the ALJ's decision (ECF No. 2).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Section 1614(a)(3)(H) of the Social Security Act provides that individuals who are eligible for SSI benefits as children (individuals who have not attained age 18) for the month preceding the month in which they attain age 18, must have their disability re-determined under the rules for disability used for adults.  Section 1614(a)(3)(H) also provides that the medical improvement review standard in section 1614(a)(4) does not apply to disability redeterminations at age 18.  Instead, the evaluation used for determining disability for adults who filed new applications for SSI benefits based on disability must be applied.

---

[2] In Plaintiff's Memorandum in Support of Judgement on the Pleadings (ECF No. 10), Claimant's counsel states "Thomas then timely filed the instant complaint with this Court on October 1, 2015, objecting to the final decision of the Commissioner, and seeking remand and reversal of the ALJ's adverse decision (ECF Doc. No. 2)."  It is unclear who Claimant's counsel is referring to as "Thomas."

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). This step is not used for redetermining disability at age 18. *See* 20 C.F.R. § 416.987(b). The second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2016). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration " must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs

3

and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
> (1)    Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2)    We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3)    We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4)    When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ need not address whether Claimant is engaging in substantial gainful activity as Claimant is applying for re-determining disability at age 18 (Tr. at

11).   Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of a history of mood disorder[3] and borderline intellectual functioning[4] (Tr. at 12)   At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 13).   The ALJ then found that Claimant has a residual functional capacity for a full range of work at all exertional levels, reduced by nonexertional limitations[5] (Tr. at 16).   Claimant has no past relevant work (Tr. at 18).   The ALJ concluded that Claimant could perform jobs at the medium exertional level such as a mold filler, packer or truck washer (Tr. at 19). At the light exertional level, the ALJ concluded that Claimant could perform jobs such as a garment bagger, sorter or agricultural grader.  (*Id.*)   At the sedentary work exertional level, the ALJ concluded that Claimant could perform jobs such as a plastic design plyer, nut sorter or folder. (*Id.*).   The Vocational Expert testified at the hearing that these jobs exist in the region consisting of West Virginia and Virginia.   On this basis, benefits were denied (Tr. at 20).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

---

[3] Part B, Listing 112.04 pertains to depressive, bipolar and other related disorders in children ages 3 through 18 years old.

[4] Part B, Lising 112.05 pertains to mental disorders in children ages 3 through 18 years old.

[5] Claimant is limited to understanding, remembering and carrying out simple,, routine, repetitive tasks, with occasional interaction with co-workers and supervisors, but no interaction with the general public.  This individual does best in an environment that permits him to work on his own, individually or in a solitary environment.  Claimant does best with an environment that requires no fast pace production requirements, has little work related decision making, and few, if any, changes in the work routine.  Due to mental limitations, jobs with a reasoning level of 1 are recommended (Tr. at 16).

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations or substitute its judgment for that of the Commissioner. *Id.* "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

### Claimant's Background

Claimant was born on February 15, 1994. On the date of the hearing, Claimant was 20 years old. He lives with his mother and does not have a driver's license (Tr. at 31). He has never had a learner's permit and has never attempted to obtain a driver's license. Claimant has never been employed. Claimant last completed the seventh grade and dropped out of school in the eighth grade. He has never tested for a GED (General Education Diploma).

### The Medical Record

A psychological evaluation was performed on June 29, 2005, by supervised psychologist Kelly Robinson, M.A.[6] (Tr. at 410-416). The notes of Psychologist Lisa Tate, M.A. reflect that

---

[6] The psychological evaluation reflects that it was conducted on June 29, 2005 and lists Kelly Robinson, M.A., as the

7

Claimant's mother reported that Claimant "has always been in special education classes. He was retained in kindergarten and the third grade" (Tr. at 410). As stated in the Mental Status Examination (MSE), Claimant's grooming and personal hygiene were poor (Tr. at 412). His attitude was fair. He maintained fair eye contact and his speech production was fair with normal rate and volume. Claimant's speech articulation was poor. He was alert throughout the evaluation and his thought processes appeared logical and coherent. His mood was euthymic and his affect was broad and reactive. (*Id.*) Ms. Tate reported that there was no indication of delusions, hallucinations, obsessive thoughts or compulsive behaviors (Tr. at 413). His insight was fair. Claimant's judgment was "within normal limits based on his performance on the Comprehension subtest of the WISC-IV."[7] Claimant's immediate memory appeared mildly deficient. His recent and remote memory appeared within normal limits. Ms. Tate stated that Claimant's concentration and attention were mildly deficient based on his performance on the Digit Span subtest of the WISC-IV[8]. (*Id.*)

Per Claimant's intellectual assessment, his WAIS-IV[9] composite scores were as follows:

|  |  |
|---|---|
| Verbal Comprehension | 87 |
| Perceptual Reasoning | 51 |
| Full Scale IQ | 58 |

(Tr. at 413).

Claimant was administered the Kaufman Test of Educational Achievement (KTEA) with the following results:

---

supervised psychologist (Tr. at 410), however, the evaluation was signed on March 31, 2007 by psychologist Lisa Tate, M.A. (Tr. at 415).

[7] Without explanation, after the statement concerning Claimant's judgement, Ms. Robinson's psychological evaluation stated "Stay away from him" (Tr. at 413).

[8] Wechsler Intelligence Scale for Children-Fourth Edition.

[9] Wechsler Adult Intelligence Scale-Fourth Edition.

| Subject | Standard Score |
|---------|----------------|
| Math | 47 |
| Reading | 66 |
| Spelling | 55 |
| Composite | 54 |

Ms. Tate diagnosed Claimant with phonological disorder and mild mental retardation (intellectual disability) (Tr. at 414).  Ms. Tate explained the diagnoses by stating:

> [Claimant] was given the diagnosis of Phonological Disorder based
> [O]n the following criteria:  failure to use developmentally expected
> speech sounds that are appropriate for age and dialect.  He was given
> the diagnosis of Mild Mental Retardation based on the following
> criteria:  a valid FSIQ of 58 and estimated deficits in adaptive
> functioning. (Tr. at 414).

Claimant's psychological evaluation reported that Claimant was mildly deficient based on his interaction with the examiner and the staff (Tr. at 415). Claimant was cooperative during the evaluation.  He walked with a normal gait and maintained normal posture.  Claimant's concentration and attention were mildly deficient based on his performance on the Digit Span subtest[10] of the WISC-IV.  His pace and persistence were with within normal limits. (*Id.*)

A Kanawha County Schools Report of Psychological Evaluation of Claimant was conducted on December 14, 2016, by Susan Canterbury Beck, M.A., Ed.S. (Tr. at 416).  The evaluation stated that at that time, Claimant was receiving Special Education Services as a Learning Disabled Student. (*Id.*).  The evaluation reflected that Claimant had been retained in Kindergarten and Third grades in school. The behavioral health observation reflected that Claimant's attention and concentration did not appear impaired (Tr. at 417). Claimant was administered a WISC-IV test to evaluate intellectual functioning.  His scores were as follows:

---

[10] The memory for Digit Scan assessment, a component of the Wechsler Intelligence Scales for Children-Revised (WISC-R), is a measure of short-term memory for children.

9

| Verbal Comprehension | 89 |
| Perceptual Reasoning | 92 |
| Full Scale IQ | 78 |

(Tr. at 417).

Ms. Canterbury Beck summarized that "According to the results of this evaluation, Daniel is functioning in the Average to Low Average range in intellectual abilities (Tr. at 418).

On August 3, 2009, James Binder, MD, completed a Social Security Administration Childhood Disability Evaluation Form (Tr. at 427- 433). Claimant's impairment was reported as mild mental retardation (intellectual disability) (Tr. at 427). Dr. Binder reported that there was no significant improvement in Claimant's impairment. (*Id.*)

On July 21, 2009, Ms. Tate performed a psychological evaluation of Claimant (Tr. at 420-426). The evaluation was based on a parent interview, child interview, mental status examination (MSE), Wechsler Intelligence Scale for Children-Fourth Editions (WISC-IV), Kaufman Test of Educational Achievement (K-TEA) and Development Test of Visual-Motor Integration (VMI) (Tr. at 420). Claimant's mother told Ms. Tate that at home Claimant becomes angry at times and says some inappropriate words (Tr. at 422). His mother asserted that Claimant "has temper problem and [he] does not think about what he is saying or doing." (*Id.*)

Ms. Tate's Mental Status Examination reported that Claimant's speech was fair and that he was alert. (*Id.*) His grooming and personal hygiene were good. Ms. Tate found Claimant's judgment to be moderately deficient "based on the comprehension score of 4." Claimant's immediate memory was within normal limits, however, Claimant's recent memory was moderately deficient.

Claimant was administered a Wechsler Intelligence Scale for Children. His scores were as follows:

```
              Verbal Comprehension        67
              Perceptual Reasoning        75
              Full Scale IQ               64
              (Tr. at 423).
```

Subtests reflect that on a scaled score, Claimant received a 4 in the subtests for similarities, digit span and compression.

On July 14, 2009, Claimant was administered the Kaufman Test of Educational Achievement (KTEA) with the following results:

| Subject | Standard Score |
| --- | --- |
| Math | 40 |
| Reading | 51 |
| Spelling | 50 |
| Composite | 42 |

(Tr. at 423).

Claimant's Psychological Evaluation dated July 21, 2009, reported Ms. Tate's diagnostic impression included mild mental retardation (Tr. at 424). Ms. Tate stated that "The diagnosis of mild mental retardation is based on what are believed to [sic] valid test results and his estimated level of adaptive functioning." (*Id.*) Claimant was found to be moderately limited in concentration. He performed within normal limits in social functioning, persistence and pace. (*Id.*)

On December 20, 2009, Sonya Christian, M.A., Ed.S., NCSP, completed a Psychological Evaluation of Claimant in response to a referral from the Multidisciplinary Evaluation Team (Tr. at 434-440). The Psychological Evaluation included the following WISC-IV IQ scores (Tr. at 436).

```
              Verbal Comprehension        71
              Perceptual Reasoning        96
              Full Scale IQ               70
              (Tr. at 417).
```

On May 14, 2012, an Adult Mental Profile was created by State agency psychologist Kara Gettman-Hughes, M.A. (Tr. at 440-445). Ms. Hughes' assessment of Claimant included a clinical interview (CI), Mental Status Examination (MSE), review of records, Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV) and Wide Range Achievement Test – Fourth Edition (WRAT-IV).   Claimant self-reported that "he has received mental health treatment from Scott Fields [Ph.D.] at Clendenin Health Center for 'anger problems'" (Tr. at 441). Ms. Gettman-Hughes reported that Claimant's "generative cognitive ability is within the extremely low range of intellectual functioning as measured by the Full Scale IQ" (Tr. at 442).  Claimant's IQ scores were as follows:

| | |
|---|---|
| Verbal Comprehension | 72 |
| Perceptual Reasoning | 75 |
| Full Scale IQ | 64 |
| (Tr. at 442). | |

Ms. Gettman-Hughes' MSE of Claimant reflected that Claimant's mood was "remarkable for irritability" and that his judgement was poor (Tr. at 444).  Claimant's immediate memory was mildly impaired and his recent memory was intact, however, his remote memory was poor.  (*Id.*) Claimant was diagnosed with mood disorder, not otherwise specified.  Ms. Gettman-Hughes stated as rational for her diagnosis that "Although current test results are deemed to be invalid, a diagnosis of borderline intellectual functioning or even mild mental retardation may be appropriate based on the claimant's reported education and work history as well as observations made during the evaluation" (Tr. at 444-445).  Claimant's prognosis was poor (Tr. at 445).  Ms. Gettman-Hughes reported that Claimant appears capable of managing his funds should an award be made.  (*Id.*)

On May 19, 2012, reviewing psychologist Holly A. Cloonan, Ph.D., completed a Psychiatric Review Technique (PRT) form (Tr. at 448-462).  Dr. Cloonan reported that a Residual Functional Capacity Assessment is necessary (Tr. at 448).  Dr. Cloonan stated that the categories

of medical disposition are Listing 12.02 Organic Mental Disorders and Listing 12.04 Affective Disorders.  The PRT stated borderline intellectual functioning (BIF) versus minor mental retardation (MMR)[11] (intelligence disability) were medically determinable impairments that were present but did not satisfy the diagnostic criteria (Tr. at 449).  Dr. Cloonan found that as criteria to satisfy "paragraph B" in Listings 12.02 and 12.04 and "paragraph D" in Listing 12.05, Claimant has moderate functional limitations in activities of daily living, social functioning and concentration, persistence or pace (Tr. at 458).  Dr. Cloonan found that Claimant had no episodes of decompensation, of extended duration.  (*Id.*)

On May 19, 2002, Dr. Cloonan completed a Mental Residual Functional Capacity Assessment (MRFC) of Claimant (Tr. at 463-466).  The MRFC addressed Listings 12.02 and 12.04.  Dr. Cloonan found Claimant to be moderately limited in the following abilities: to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (*Id.*)  Dr. Cloonan found that "The Claimant may have the above moderate limits in F.C. [functional capacity] associated w/his mental condition.  He is able to learn and perform routine repetitive work-like activities in a setting w/no more than occasional contact w/the public, supervisors and w/coworkers" (Tr. at 465).

---

[11] It is not clear what Dr. Cloonan meant by "BIF vs. MMR" (Tr. at 449).

Records from Cabin Creek Health Systems dated August 28, 2009, reflect that Claimant was seen for depression and behavior problems (Tr. at 475). On July 9, 2012, claimant received treatment for anger management (Tr. at 467-477). Treatment notes reflect that Claimant is illiterate.

On September 12, 2012, State agency consultant Jeff Harlow, Ph.D., reviewed Claimant's file (Tr. at 477). Dr. Harlow's Case Analysis affirmed Dr. Cloonan's PRTF and MRFC assessment dated 05/19/2012.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant argues:

> Listing 12.02 addresses organic mental disorders associated with a dysfunction of the brain and a loss of previously acquired functional abilities – a condition and mental state from which Keeten has never been found to have. See 20 CFR Part 404, Subpt. P, App. 1 § 12.02. Indeed, the evidence of record documents Keeten's long history of subaverage general intellectual functioning with deficits in adaptive functioning during the developmental period – the mental condition addressed under Listing 12.05. See 20 CFR Part 404, Subpt. P, App. 1 § 12.05. (ECF No. 10).

Additionally, Claimant asserts that the ALJ failed to evaluate whether Claimant's condition satisfied Listing 12.05C elsewhere in the decision (ECF No. 10). Defendant asserts that Claimant failed to meet all the criteria of Listing 12.05C because Claimant lacks significant deficits in adaptive functioning prior to age twenty-two (22) (ECF No. 11).

<u>Listing 12.05C</u>

The Code of Federal Regulations lists the impairment as:

> 12.05 *Intellectual disability:* Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports the onset of the impairment before age 22.
> The required level of severity for this disorder is met when

14

the requirements in A, B, C, or D are satisfied.

A.  Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
OR

B.  A valid verbal, performance, or full scale IQ of 59 or less;
OR

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
OR

D.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1.  Marked restriction of activities of daily living; or
2.  Marked difficulties in maintaining social functioning; or
3.  Marked difficulties in maintaining concentration, persistence, or pace; or
4.  Repeated episodes of decompensation, each of extended duration.

A claimant may not meet the intellectual disability Listing at 12.05C unless his impairment satisfies, both prongs, (1) the diagnostic description in the introductory paragraph of Listing 12.05 and (2) the specific criteria of 12.05C.  20 C.F.R. pt. 404, Subpt. P, App.1, § 12.00A.

Listing 12.02

Listing 12.02 addresses organic mental disorders associated with a dysfunction of the brain and a loss of previously acquired functional abilities.  Claimant's disability determination as a child did not include a finding that Claimant satisfied the criteria for Listings 12.02, as it did in finding a 12.05C.

Discussion

The ALJ found that in activities of daily living, social functioning and in regard to concentration, persistence and pace, Claimant has moderate restrictions (Tr. at 13-14).  The ALJ found that Claimant has not experienced episodes of decompensation, which have been of

15

extended duration (Tr. at 14).

The ALJ gave the psychiatric review technique assessment by State agency consultant, Holly Cloonan, Ph.D., great weight (Tr. at 14-15). Later, the ALJ stated that he considered Dr. Cloonan's MRFC assessment of Claimant and afforded it "some weight" (Tr. at 17) The ALJ also gave "some weight" to the opinion of Jeff Harlow, Ph.D., who confirmed Dr. Cloonan's MRFC.[12] (*Id.*)

The ALJ stated "the undersigned notes that Dr. Cloonan assessed the claimant under only borderline intellectual functioning (Listing 12.02) and not under intellectual disability (Listing 12.05), even though her diagnosis was 'borderline intellectual functioning versus mild mental retardation (Tr. at 17).'"

The ALJ's decision provides:

> [T]he undersigned has determined that the claimant's testimony and his medical evidence of record suggests that he is slightly more limited in his mental residual functional capacity than determined by the disability determination services (DDS) State agency consultants (Exhibits 13E, 6F, 9F and hearing testimony). This assessment is based on additional records and credible aspects of the claimant's testimony.
>
> The undersigned notes that Cabin Creek Health Systems assessed Global Assessment of Functioning (GAF) scores ranging from 63, when discussing the death of his favorite sister, to 67 (Exhibit 1F). The undersigned finds GAF scores in general are of limited evidentiary value. These subjectively assessed scores reveal only snapshots of impairments and improved behavior. The undersigned gives more weight to the objective details and chronology of the record, which more accurately describe the claimant's impairments and limitations. For these reasons, the undersigned gives partial weight to the GAF scores documented in the treatment records. Nevertheless, the undersigned notes that a Global Assessment of Functioning score of 61 to 70 shows that the claimant has some mild

---

[12] The ALJ did not state what amount of weight, if any, was given to the opinions of Ms. Robinson, Dr. Binder, Ms. Tate, Ms. Christian and Ms. Gettman-Hughes.

symptoms or some difficulty in his social, occupational or school functioning, but generally functions pretty well and has some meaningful interpersonal relationships. The Glove Assessment of Functioning scores assessed by Cabin Creek Health are consistent with the findings in this decision.  The claimant has the ability to have some meaningful interpersonal relationships, as some to the Global Assessment of Functioning scores were from counseling sessions where he discussed the devastating loss of his favorite sister (Exhibit 11F).  The claimant's activities of daily living establish that he generally functions pretty well (Exhibit 13E, 6F and hearing testimony).  Therefore, these Global Assessment of Functioning scores are somewhat supported by the evidence in this claim and are afforded partial weight. (Tr. at 18).

The ALJ stated that she "has determined that the provisions of 12.02 are more appropriate" relying in part on her finding that "the record shows an [sic] absence of deficits in adaptive functioning" (Tr. at 15).  Although Claimant was seeking a re-determination of his disability, the ALJ did not analyze and explain whether Claimant still meets the criteria for Listing 12.05C. Claimant demonstrated a full IQ score of 58 in June 2005 which was also relied on in a consultative examination in July 2009.  The ALJ found that Claimant's June 2005 full scale IQ score and Claimant's estimated deficits in adaptive functioning were valid (Tr. at 13).  The ALJ stated that "there are no valid IQ tests in the record since May 21, 2012."  (*Id.*)

In determining that Claimant's alleged disability should be determined by the criteria of Listing 12.02 instead of Listing 12.05 the ALJ states that Claimant is functioning rather independently and there is an absence of deficits in adaptive functioning (Tr. at 15).  The ALJ held that "Although the claimant as stated that he is illiterate, he did testify that he was able to read a grocery list."  (*Id.*)  The ALJ held that "claimant's statements and allegations are found somewhat credible based on consistency between his allegations of being a 'slow learner' and his school records" (Tr. at 17).

An ALJ's failure to explain his reasoning precludes a court from undertaking a "meaningful review" of his findings. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. *See Radford*, 734 F.3d 288, 295 (4th Cir. 2013).  If the reviewing court has no way of evaluating the basis for the ALJ's decision, then "the proper course is to remand to the agency for additional investigation or explanation." *Id*. at 295 (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

It was established that Claimant demonstrated a loss of adaptive functioning as a child as he was granted SSI for mild mental retardation and phonological disorder. Therefore, an explanation is necessary in this instance because the record contains evidence suggesting Claimant may meet or equal Listing 12.05C.  The ALJ does not analyze Claimant's history of adaptive functioning.  Also, the ALJ did not provide an analysis addressing Claimant's adaptive functioning found in his SSI claim as a child versus the ALJ's position that Claimant's daily activities as a young adult do not demonstrate a deficit in adaptive functioning.

The Fourth Circuit has held that "in the absence of evidence demonstrating a change in intellectual functioning, it must be assumed that a claimant's IQ has remained relatively constant since before age twenty-two" See *Luckeyy v. U.S. Dept. of Health & Human Services*, 890 F.2d 666, 668 (4th Cir. 1989) (citing *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985)).  Indeed, the Fourth Circuit held in *Branham* that "there are many possible reasons why an adult would not have obtained an IQ test early in life and the absence of an IQ test during the developmental years does not preclude a finding of mental retardation predating age 22."  The court stated "that in the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant." *Id.*

The clear lack of analysis of the criteria to satisfy Listing 12.05C makes it impossible for this Court to evaluate whether substantial evidence supports the ALJ's findings. See *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ's failure to provide a complete explanation for his conclusion that Claimant's impairments should not be analyzed to determine if Listing 12.05C is met or equaled renders remand appropriate. It is impossible for a court to conduct a meaningful review of a conclusory legal analysis. *Id*. at 295.

<u>Residual Functional Capacity</u>

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. *Id*. at \*5. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at \*7. The ALJ also must "explain how any material inconsistencies or ambiguities, in the evidence in the case record were considered and resolved." *Id.*

"RFC represents the most that an individual can do despite his or her limitations or restrictions." *See* Social Security Ruling 96-8p, 1996 WL 374184, \*1 (July 2, 1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545, 416.945 (2015). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." *Id.* "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her

impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

In *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations[13].'" It is only after the function-by-function analysis has been completed that the RFC may "be expressed in terms of the exertional levels of work." *Id.*

In determining a claimant's RFC, the ALJ must consider "'all of [the claimant's] medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two" of the sequential analysis. *Id.* at 635. The ALJ must "consider all [the claimant's] symptoms, including pain, and the extent to which [his] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." See 20 C.F.R. §§ 404.1529(a), 414.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [his] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [his] symptoms limit [his] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 414.929(c)(1).

---

[13] The listed functions under Social Security Ruling 96-8p include:

> [T]he claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying,, pushing, pulling or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)"; (2) mental abilities, "such as limitations in understanding, remembering and carrying out instructions and in responding appropriately to supervision, coworkers and work pressures in a work setting"; and (3) other work-related abilities affected by impairments "such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses and impairment(s) which impose environmental restrictions." *Mascio*, 780 F.3d at 636 n.5.

The Fourth Circuit in *Mascio* noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. *Id.* The Fourth Circuit further noted that a *per se* rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2 d Cir. 2013)); *see also*, *Ashby v. Colvin*, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

The ALJ found that mentally, Claimant was limited understanding, remembering and carrying out simple, routine, repetitive tasks, with occasional interaction with co-workers and supervisors, but no interaction with the general public (Tr. at 16). The ALJ found that Claimant had moderate difficulties in maintaining concentration, persistence, or pace (Tr. at 14).

In assessing Claimant's RFC, the ALJ posed a hypothetical questions to the Vocational Expert (VE) with the hypothetical individual being limited to understanding, remembering and carrying out simple, routine, repetitive tasks, with occasional interaction with co-workers and supervisors, but no interaction with the general public.

In *Mascio*, the Fourth Circuit held that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Mascio*, 780 F.3d at 638. The Fourth Circuit reasoned that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitations in concentration, persistence, or pace." *Id.*

21

Consistent with the facts in *Mascio*, the ALJ here failed to account for Claimant's limitations in maintaining concentration, persistence, or pace. The ALJ failed to explain the exclusion of the specific moderate limitations in his hypothetical question to the VE.  In finding Claimant has moderate difficulties in concentration, persistence or pace the ALJ states in her decision that the supporting evidence includes Claimant's inability to: pay attention for longer than 5 minutes; finish reading, chores or watching a movie; and need to be reminded to take his medications or to feed his dog (Tr. at 14).  Accordingly, the undersigned respectfully recommends that the District Judge find that the ALJ failed to properly account for Claimant's limitations in concentration, persistence and pace by either including a limitation for Claimant's ability to stay on task in the hypothetical to the Vocational Expert or explain the exclusion of the limitation.

Defendant failed to explain and weigh other evidence such as Claimant dropping out of school in the eighth grade and attending special education classes while in school. The ALJ summarizes Claimant's assertions in support of his mental impairment deficits in adaptive functioning as follows:

> The claimant alleges mental intelligence functioning deficits and a mood disorder.  The claimant droppoed out of school in the 8th grade.  He has no GED.  He does not have a driver's license and did not receive a learner's permit.  He alleges deficits in adaptive functioning.  The claimant alleges his mood disorder and depressive disorder makes it hard for the claimant to establish rapport.  He claims anger outbursts, including an episode where he wanted to strangle the neighbor's dog because it chased his dog over a hill.  He noted in his anger he screamed and cussed at his neighbor (Tr. at 16).

The ALJ failed to analyze and explain the weight given to Claimant's assertions when considered with her finding that Claimant does not have deficits in adaptive functioning.

Judicial Review

The Fourth Circuit recently held that the weight of authority suggests that failure to properly document application of the special technique for evaluating and documenting mental impairments will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review. *Patterson v. Commissioner of Social Security*, Case No. 2:14-cv-00763-BHH (4th Cir. January 19, 2017). The Court stated that "without documentation of the special technique, it is difficult to discern how the ALJ treated relevant and conflicting evidence." *Id.* (citing *Mascio*, 780 F.3d at 637 (refusing to hold that ALJ's lack of reasoning constituted harmless error "[b]ecause we are left to guess about how the ALJ arrived at his conclusions" regarding an RFC assessment); *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980).

The Fourth Circuit in *Patterson* remanded the case and directed the ALJ to provide a more detailed explanation of any evaluation of applicable Listings, including Listing 12.05. The Court held that the ALJ following the dictates of applicable regulations upon remand will provide an appropriate record for review and accord a claimant's arguments "the procedure and respect they deserve."

The Court further asserted:

> We do not take a position on the merits of Patterson's application for disability benefits. Instead, the dispute here arises from a problem that has become all too common among administrative decisions challenged in this court – a problem decision makers could avoid by following the admonition they have no doubt heard since their grade-school math classes: Show your work. The ALJ did not do so here, and this error rendered his decision unreviewable. *Patterson* (citing *Kohler*, 546 F.3d at 267.)

In the present case, the ALJ's RFC assessment did not resolve all inconsistencies in the evidence as a whole as required under SSR 96-8p. The undersigned respectfully recommends that

23

the District Judge find that the ALJ did not address conflicting evidence or explain away contrary findings.  The undersigned respectfully suggests that the District Judge remand this case for further evaluation because the ALJ's evaluation of Claimant's mental impairment cannot be affirmed because the ALJ did not explain how he weighed all the relevant evidence.  Put simply, "[t]he ALJ's lack of explanation requires remand." *Mascio*, at 640.

Additionally, the Fourth Circuit has recognized that "the Secretary's regulation 'expressly define[s] mental retardation as denoting 'a lifelong condition.'" *Phillips v. Colvin*, No. 12-3265 (8th Cir. July 25, 2013) (citing *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985)).  The court held that in the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the Claimant's IQ had remained relatively constant.  *Id.*  Further, the Fourth Circuit held in *Luckey* that in addition to the IQ prong of section 12.05C, the additional significant limitation prong must also be met.  *Luckey v. Department of Health & Human Services*, 890 F. 2d 666,668-669 (4th Cir. 1989).  The Fourth Circuit has held that the additional limitation "need not be disabling in and of itself."  *Branham*, 775 F,2d. at 1273.  The inquiry is whether the claimant suffers from any additional physical or mental impairment significantly limiting work-related functions." *Kennedy v. Heckler*, 739 F. 2d at 1273.

In the present matter, the ALJ found that Claimant suffers from severe impairments of mood disorder and borderline intellectual functioning (Tr. at 12).  The ALJ relied on State agency consulting psychologist Ms. Gettman-Hughes' determination that a diagnosis of mood disorder, not otherwise specified, was based on the Claimant's reported mood symptoms that did not meet criteria for any specific mood disorder (Tr. at 13).  Ms. Gettman-Hughes noted it was difficult to choose between depressive disorder, not otherwise specified, and bipolar disorder, not otherwise

24

specified. (*Id.*) The ALJ also referenced Claimant's hearing testimony when discussing Claimant's diagnosis for mood disorder. Claimant testified that he gets angry easily. Claimant states that he has problems with depression. Claimant reports that sometimes he cuts himself. He claims he yells and screams when angry. The ALJ does not provide a narrative explaining the weight given to contradictive findings regarding the scope and limitations of Claimant's adaptive functioning.

<u>Conclusion</u>

Listing 12.05C for intellectual disability (previously mild mental retardation) requires a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Also, the introductory paragraph to Listing 12.05 must be satisfied which requires Claimant to demonstrate an intellectual disability. Listing 12.05 states that "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22."

This Court recently provided a comprehensive definition of "adaptive functioning" and description of the adaptive functioning analysis required by Listing 12.05 in *Hardway v. Colvin*, 2015 U.S. Dist. LEXIS 29762 (S.D. W. Va. Feb. 17, 2015):

> Adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM-IV at 42. Skill areas of adaptive functioning include "communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Id*. at 41. To determine whether a claimant demonstrates deficits in adaptive functioning that manifested during the developmental period, the ALJ must

25

perform a fact-specific inquiry. Although this inquiry has "few bright line rules," courts in this circuit have pointed to multiple factors that tend to establish the presence of deficits in adaptive functioning with an early onset. *See Weedon v. Astrue*, Case No. 0:11-2971-DCN-PJG, 2013 U.S. Dist. LEXIS 45846, 2013 WL 1315311, at *5 (D.S.C. Jan. 31, 2013) (collecting cases). For example, if a claimant has previously been diagnosed with mental retardation, courts are inclined to find that the claimant had an earlier onset of deficits in adaptive functioning. *Conyers v. Astrue*, No. 4:11-CV-00037-D, 2012 U.S. Dist. LEXIS 112712, 2012 WL 3282329, at *8-9 (E.D.N.C. June 29, 2012). In addition, evidence of a claimant's illiteracy, *Rivers*, 2011 U.S. Dist. LEXIS 70314, 2011 WL 2581447, at *4, evidence that a claimant has never lived independently, *Holtsclaw v. Astrue*, No. 1:10CV199, 2011 U.S. Dist. LEXIS 150118, 2011 WL 6935499, at *5 (W.D.N.C. Dec. 30, 2011), and evidence that a claimant is dependent on others, or has never been responsible to care for others, *Salmons v. Astrue*, No. 5:10-CV-195-RLV, 2012 U.S. Dist. LEXIS 71632, 2012 WL 1884485, at *7 (W.D.N.C. May 23, 2012), have all been considered proof of deficits in adaptive functioning that manifested before age 22.

Another well-recognized indicator of limitations in adaptive functioning manifesting in the developmental years is poor academic performance. *Smith v. Astrue*, 2011 U.S. Dist. LEXIS 22682, 2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011); *Salmons*, 2012 U.S. Dist. LEXIS 71632, 2012 WL 1884485, at *7 ("[F]unctional academic skill is the primary measure of deficits in adaptive functioning before age 22."). Accordingly, school records showing ongoing problems in the classroom are important evidence of early-onset deficiencies in functioning that should not be undervalued when assessing the first prong of Listing 12.05(B). Work history is also a factor to consider, as absent or unstable job performance may indicate deficits in adaptive functioning; although, the existence of a stable work history, by itself, is not determinative of the inquiry. *See Salmons*, 2012 U.S. Dist. LEXIS 71632, 2012 WL 1884485, at *2-3 (citing *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989)). *Hardway v. Colvin*, 2015 U.S. Dist. LEXIS 29762, *79-84 (S.D. W. Va. Feb. 17, 2015)

In *Hardway*, the Court found the ALJ did not properly address the plaintiff's level of adaptive functioning because he failed to discuss the plaintiff's academic performance, her placement in special education, her dropping out of school after completing the eighth grade,

achievement scores indicating she had a very low-level reading ability and evidence that the plaintiff relied on others to help her activities of daily living. *Hardway, id.* at *85-86. Because the ALJ failed to perform the requisite adaptive functioning analysis of the listing, the Court remanded the case.

As noted previously, the ALJ in the present matter indicated there was no evidence that Claimant had deficits in adaptive functioning (Tr. at 15). The ALJ then proceeded to list several deficits of adaptive functioning to which Claimant testified and provided on the record: "The claimant has stated he is illiterate…" (Tr. at 15, 210-214, 268, 278-280, 282, 414, 423); and "The claimant dropped out of school in the 8th grade. He has no GED. He does not have a drivers' license and did not receive a learner's permit." (Tr. at 16, 205). This was in addition to the ALJ's earlier acknowledgement that Claimant had been diagnosed with an intellectual disability ("mild mental retardation") as a child (Tr. at 13).  The ALJ found Claimant's very basic activities of daily living, such as climbing trees, feeding dogs, and using a phone and a microwave to be "robust" (Tr. at 15, 17), without analyzing evidence that Claimant could not complete any of his Social Security disability paperwork independently (Tr. at 69, 92, 341-348, 360-367, 396, 398). The ALJ also passed over observations by an Agency representative who noted Claimant to be unable to "read or write very well," but "did manage to print his name," and "[i]t was clear that he has angry [sic] issues" (Tr. at 353). Moreover, the ALJ gave no consideration to evidence in the record that showed Claimant received "heavily modified [work] to allow him success in both the general and special education setting" (Tr. at 251, 259, 282), but nonetheless, was retained in at least three grades (Tr. at 204, 411, 421).

The Fourth Circuit has held that "in the absence of evidence demonstrating a change in intellectual functioning, it must be assumed that a claimant's IQ has remained relatively constant

since before age twenty-two" See *Luckeyy v. U.S. Dept. of Health & Human Services*, 890 F.2d 666, 668 (4th Cir. 1989) (citing *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985)).  Indeed, the Fourth Circuit held in *Branham* that "there are many possible reasons why an adult would not have obtained an IQ test early in life and the absence of an IQ test during the developmental years does not preclude a finding of mental retardation predating age 22."  The court stated "that in the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ had remained relatively constant."  *Id.*

Recently, the Fourth Circuit held that the weight of authority suggests that failure to properly document application of the special technique for evaluating and documenting mental impairments will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review.  *Patterson v. Commissioner of Social Security*, Case No. 2:14-cv-00763-BHH (4th Cir. January 19, 2017).  The Court stated that "without documentation of the special technique, it is difficult to discern how the ALJ treated relevant and conflicting evidence."  *Id.* (citing *Mascio*, 780 F.3d at 637 (refusing to hold that ALJ's lack of reasoning constituted harmless error "[b]ecause we are left to guess about how the ALJ arrived at his conclusions" regarding an RFC assessment); *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980).

The Fourth Circuit in *Patterson* remanded the case and directed the ALJ to provide a more detailed explanation of any evaluation of applicable Listings, including Listing 12.05.  The Court held that the ALJ following the dictates of applicable regulations upon remand will provide an appropriate record for review and accord a claimant's arguments "the procedure and respect they deserve."

The Court further held:

> We do not take a position on the merits of Patterson's application
> for disability benefits.  Instead, the dispute here arises from a

> problem that has become all too common among administrative
> decisions challenged in this court – a problem decision makers could
> avoid by following the admonition they have no doubt heard since
> their grade-school math classes: Show your work.  The ALJ did not
> do so here, and this error rendered his decision unreviewable.
> *Patterson* (citing *Kohler*, 546 F.3d at 267.)

In the present matter, the ALJ's RFC assessment did not resolve all inconsistencies in the evidence as a whole as required under SSR 96-8p. The undersigned respectfully recommends that the District Judge find that the ALJ did not address conflicting evidence or explain away contrary findings.  The undersigned respectfully suggests that the District Judge remand this case for further evaluation because the ALJ's evaluation of Claimant's mental impairment cannot be affirmed because the ALJ did not explain how he weighed all the relevant evidence.  Put simply, "[t]he ALJ's lack of explanation requires remand."  *Mascio*, at 640.

Although the ALJ does not consider the following to be evidence that Claimant has deficits in adaptive function, the ALJ still pointed out that Claimant asserts he is illiterate, he attended special education classes in school, he repeated kindergarten and third grade, he dropped out of school in the eighth grade, he does not have a driver's license or learner's permit and he needed help completing the paperwork to file his claim for disability.  Instead, the ALJ one-sidedly lists the activities of daily living Claimant can perform independently as rational for considering Claimant's impairments under Listing 12.02 instead of 12.05C (Tr. at 15).

As Claimant was awarded disability as a child for mild mental retardation by demonstrating deficits in adaptive functioning manifested before age 22 and a full scale IQ of 58, a redetermination upon the age of 18 would require evidence of a change in Claimant's IQ scores and an explanation why Claimant no longer has deficits in adaptive functioning.  Simply stating that the record shows an absence of deficits in adaptive functioning required under the listing lacks analysis when deficits in adaptive functioning were previously proven.  A change must be

demonstrated.   Also, without a valid IQ score to demonstrate an increase from Claimant's previous IQ score of 58, the record will continue to reflect an IQ score under 60.

It is unclear whether the RFC assessment, pursuant to SSR 96-8p, is based on all of the relevant evidence in the case record.  Accordingly, the undersigned is unable to determine if the entire case as a whole was taken into consideration when evaluating Claimant's impairments under Listing 12.05C.  Therefore, the undersigned respectfully recommends that the District Judge find that the ALJ failed to analyze Claimant's impairments under Listing 12.05C and failed to analyze the conflicting evidence regarding Claimant's deficits in adaptive functioning, or the lack there of.  The undersigned respectfully recommends that the District Judge find that the ALJ's opinion is not supported by substantial evidence and lacks the analysis and narrative discussion that would allow for meaningful review.

All other issues will not be discussed at this time due to the recommendation to remand for reconsideration of the record of evidence as a whole.

For the reasons provided above, the undersigned proposes that the presiding District Judge **GRANT** Plaintiff's Memorandum of Law in Support of Judgment on the Pleadings (ECF No. 10), **REVERSE** the final decision of the Commissioner, **REMAND** this case to the Commissioner for further proceedings pursuant to sentence four of 42 § U.S.C. § 405(g) and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge John T. Copenhaver, Jr..  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within

which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter:  February 28, 2017

Dwane L. Tinsley
United States Magistrate Judge